IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Bankruptcy No. 21-5123-MMP** |
| DEEPROOT CAPITAL MANAGEMENT, LLC, ET AL., | § | |
| | § | **Jointly Administered** |
| DEBTORS. | § | |
| | § | |
| JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF DEEPROOT CAPITAL MANAGEMENT, LLC, ET AL., | § | **Adversary No. 22-05097-MMP** |
| PLAINTIFF, | § | |
| V. | § | |
| ROBERT J. MUELLER, | § | |
| DEFENDANT | § | |

## DEFENDANT'S MOTION TO TRANSFER OR ABATE ADVERSARY PROCEEDING

TO THE HONORABLE COURT:

Defendant Robert J. Mueller ("**Mueller**") files this Motion to Transfer or Abate Adversary Proceeding, and would state as follows:

### I. INTRODUCTION

1. Mueller is currently facing substantially overlapping allegations in two separate proceedings. The first proceeding was filed by the Securities and Exchange Commission (the "**SEC**") in August 2021 and is currently pending before Judge Rodriguez in District Court, captioned Civil Action No. 5:21-cv-785-XR (the "**District Court Proceeding**"). The second is

this adversary proceeding, filed by the Trustee for the deeproot family of companies[1] in December 2022 (the "**Adversary Proceeding**").

2. The two cases involve a number of substantively identical allegations, including that Mueller operated a "Ponzi" scheme, inappropriately diverted funds from the deeproot entities to himself, and breached his fiduciary duties to the deeproot entities. Mueller has filed answers in both cases, denied the allegations against him, and asserted substantially the same affirmative defenses, including reliance on the advice of counsel. Resolution of these cases will thus rely on substantially the same facts, many of the same legal issues, and nearly all the same witnesses.

3. Given the considerable factual and legal overlap, allowing both cases to proceed at the same time would involve a substantial risk of inconsistent factual and legal conclusions and involve a substantial waste of the parties' and the courts' resources. Indeed, on the current schedule it appears likely that trial in the two cases could occur *at the same time*.

4. Mueller therefore asks this Court to transfer this Adversary Proceeding to the District Court for consideration of whether this case should be stayed, consolidated with the District Court Proceeding, or otherwise permitted to proceed. In the alternative, Mueller requests that the Court abate or continue this proceeding until trial in the District Court Proceeding is completed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The District Court Proceeding

5. The SEC filed its complaint in the District Court Proceeding on August 21, 2021.

---

[1] The "deeproot entities" includes the entities represented by the Trustee in this bankruptcy proceeding: Policy Services, Inc.; Wizard Mode Media, LLC; deeproot Pinball, LLC; deeproot Growth Runs Deep Fund, LLC; deeproot 575 Fund, LLC; deeproot 3 year Bonus Income Debenture Fund, LLC; deeproot Bonus Growth 5 Year Debenture Fund, LLC; deeproot Tech, LLC; deeproot Funds, LLC; deeproot Studios, LLC; and deeproot Capital Management, LLC.

*See* Ex. A. The SEC alleges that Mueller engaged in a scheme to defraud investors in the deeproot entities, principally by failing to disclose: (1) "Ponzi-like" payments from new investors to previous investors; (2) that the deeproot entities invested more than represented in deeproot Pinball, LLC and other affiliated entities; and (3) that Mueller received a salary and other payments from the deeproot entities. *See Id.* ¶¶ 8-10, 43-71. The SEC further alleges that Mueller "breached [his] fiduciary duties" to the deeproot entities by failing to conduct any "analysis" prior to investing funds into the deeproot entities. *Id.* ¶¶ 55, 58, 62. Based on these allegations, the SEC asserts causes of action against Mueller for violation of the federal securities laws. *See id.* ¶¶ 72-94.

6. On February 14, 2022, Mueller filed his Original Answer to the Complaint, in which Mueller asserted the privilege against self-incrimination regarding a number of the SEC's allegations. *See Defendant Robert J. Mueller's Answer to Securities and Exchange Commission's Complaint*, filed in District Court Proceeding [ECF No. 43].

7. On January 10, 2022, Mueller filed a Motion to Stay the District Court Proceeding based on the criminal investigation regarding the same subject matter. *See Robert J. Mueller's Motion to Stay*, filed in District Court Proceeding [ECF No. 34]. On March 17, 2022, the District Court entered an order granting in part and denying in part the Motion to Stay, which stayed certain proceedings, permitted limited discovery, and required regular updates regarding the status of the criminal investigation. *See Order*, filed in District Court Proceeding [ECF No. 48].

8. On November 10, with agreement of the parties, the District Court lifted the stay on discovery and other proceedings and entered a new scheduling order. *See Amended Scheduling Order*, filed in District Court Proceeding [ECF No. 72].

9. On November 30, 2022, Mueller filed his Amended Answer, which denied most of the SEC's allegations and asserted a number of affirmative defenses to the SEC's claims, including

3

that Mueller relied on the advice of counsel. *See* Ex. B at 12-13.

10. Substantial discovery has already been completed in the District Court Proceeding. The parties have produced millions of pages of documents, exchanged multiple sets of written discovery, and completed multiple depositions, including of Mueller. The SEC and Mueller are currently discussing the production of documents from Mueller's former counsel—on whose advice Mueller relied—and the date for depositions of such counsel.

11. The District Court's current scheduling order includes a deadline for discovery of May 26, 2023, a mediation deadline of June 9, 2023, and a deadline for dispositive motions of June 30, 2023. *See Second Amended Scheduling Order*, filed in District Court Proceeding [ECF No. 86]. Trial in the District Court Proceeding is currently set for October 9, 2023. *See id.*

### B. The Adversary Proceeding

12. The SEC's investigation and the filing of its Complaint led Mueller, then the owner and principal manager of the deeproot entities, to initiate Chapter 7 bankruptcy proceedings on behalf of the deeproot entities. Those proceedings were eventually consolidated into one proceeding and the Trustee was appointed on behalf of the deeproot entities.

13. On December 8, 2022, the Trustee filed more than twenty adversary proceedings against various parties, including this Adversary Proceeding against Mr. Mueller. *See* Ex. C (Plaintiff's Original Complaint).

14. The Trustee's allegations against Mueller piggy-back on the SEC's allegations in the District Court Proceeding. The Trustee alleges that Mueller operated a "Ponzi Scheme" in which he used payments from new investors to make payments to previous investors. *See id.* ¶ 1. The Trustee further alleges that Mueller made inappropriate investments in the deeproot entities, made fraudulent transfers to himself or for his benefit, and breached his fiduciary duties to the

deeproot entities, among other allegations. *See id.* ¶¶ 1-6, 12-25, 38-44.

15. Based on these allegations, the Trustee asserts multiple claims: for avoidance of fraudulent transfers under 11 U.S.C. § 548 for payments pursuant to the alleged "Ponzi Scheme" (Counts One and Two); for avoidance of fraudulent transfers to Mueller under 11 U.S.C. § 554 and the Texas Uniform Fraudulent Transfers Act ("**TUFTA**") (Counts Three, Four, and Five); for avoidance of alleged preferential transfers to Mueller under 11 U.S.C. § 547(b) (Count Six); for recovery of allegedly avoided transfers under 11 U.S.C. § 550 and TUFTA (Count Seven); for alleged breach of fiduciary duty (Count Eight); and to subordinate Mueller's claims against the bankruptcy estate under 11 U.S.C. § 502 (Count Nine). *See id.* ¶¶ 48-96.

16. Mueller filed his Answer to the Trustee's Complaint on January 23, 2023. *See* Ex. D. Mueller denied the Trustee's substantive allegations and asserted most of the same affirmative defenses he asserted in the District Court Proceeding, including reliance on the advice of counsel. *See id.* ¶¶ 12-14. Mueller also stated that he does not consent to this Court's jurisdiction to enter final orders and a final judgment in this case. *See id.* ¶ 9.[2]

17. The only discovery served in this Adversary Proceeding is one set of Requests for Admission. No documents have been produced and no depositions have been taken (or even requested). The Scheduling Order entered by the Court set a deadline for discovery of April 25, 2023, a deadline for dispositive motions of May 5, 2023, and a docket call for June 12, 2023.

18. Counsel for Mueller and the Trustee have discussed a potential abatement or continuance in this matter on multiple occasions. *See* Ex. E. On one such occasion, counsel for the Trustee indicated that he expected the deadlines in all the adversary proceedings filed by the Trustee to be continued. *See id.* Since then, counsel for Mueller has repeatedly attempted to obtain

---

[2] Mueller reserves the right to file a motion to withdraw the reference regarding this Adversary Proceeding.

5

the Trustee's position on whether this case could be transferred—or at least continued—until after the trial in the District Court Proceeding. *See id.* Counsel for the Trustee has not responded.

### III. ARGUMENT AND AUTHORITIES

19. The Fifth Circuit applies the "first-filed" rule when related cases are pending in different courts. *See Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th. Cir. 1999). The rule requires that a court in which an action is second-filed must consider whether there is substantial overlap with issues raised in a previously filed case. *See id.* at 606. If the second-filed court concludes that there may be substantial overlap between the cases, it must transfer the case to the first-filed court for determination of whether the second-filed case should proceed. *See id.*; *In re LJM2 Co-Investment, L.P.*, 327 B.R. 786, 789-90 (Bankr. N.D. Tex. 2005) ("If this court finds that the issues might substantially overlap, the court should transfer the case to the [first-filed district] to determine which case should, in the interests of sound judicial administration and judicial economy, proceed.")

20. The cases need not be identical. Rather, courts must consider whether the overlap is "substantial," considering "such factors as the extent of the overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011). In considering these factors, the Court must "exercise care to avoid interference" with other courts, as "[t]he concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Id.* (quoting *Save Power Ltd. V. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)).

21. The first-filed rule applies "where related cases are pending before two judges in the same district . . . as well as where related cases have been filed in different districts." *Save*

6

*Power*, 121 F.3d at 950. The rule also applies to cases pending as adversary proceedings before United States Bankruptcy Courts. *See In re: ATP Oil and Gas Corp.*, Case No. 12-36187, Adversary No. 14-3301, 2016 WL 1043680, at * (Bankr. S.D. Tex. Mar. 5, 2016) (dismissing adversary proceeding under "first-filed" rule); *LJM2 Co-Investment*, 327 B.R. at 789-90 (transferring adversary proceeding to a district court under "first-filed" rule).

22. Here, the "substantial overlap" between this Adversary Proceeding and the District Court Proceeding is obvious from the face of the complaints.[3]

23. First, the Trustee's central claim is that Mueller operated a "Ponzi Scheme," which the Complaint describes as using funds from new investors to make monthly payments to previous investors. *See* Ex. C ¶¶ 1, 12-25. The claim is substantively identical to the SEC's claim that Mueller made "Ponzi-like payments," allegedly involving the same monthly payments to previous investors. *See* Ex. A ¶¶ 7, 14, 43-53. Mueller has denied the allegations in both cases and asserted an advice of counsel defense, arguing that his attorneys approved the language in the PPMs that concerned this alleged use of funds. *See* Ex. B; Ex. D. If both cases proceed, two different courts will be asked to determine whether the same transactions constitute "Ponzi" payments or were otherwise improper, raising the risk of inconsistent judgments.

24. Second, both the Trustee and the SEC allege that the Mueller did not adequately disclose to investors the manner in which the deeproot entities invested in life insurance policies, at times using nearly identical language. *See* Ex. A ¶ 30 ("Although not disclosed in the 575 Fund's PPM until 2019, according to Mueller, the 575 Fund never held any interests in life policies directly, but rather purchased securities issued by the dGRD Fund, which in turn owned the life policies."); Ex. C ¶ 20 ("Although not disclosed in the 575 Fund PPM until 2019, the 575 Fund

---

[3] There is no dispute that the District Court Proceeding is the "first filed," as it was filed more than a year before this Adversary Proceeding. *Compare* Ex. A *with* Ex. C.

7

never held any interest in the life insurance policies directly, rather it purchased securities issued by the dGRD Fund, which in turn owned the life insurance policies . . . ."). Both courts will thus be asked to determine whether the allocation of funds was fraudulent or otherwise inappropriate.

25. Third, both the Trustee and the SEC allege that it was improper for Mueller to receive a salary or for the deeproot entities to make certain payments on Mueller's behalf. The SEC contends that the payments were not properly disclosed in the PPMs. *See* Ex. A ¶¶ 8-9, 64-71. The Trustee contends that these payments amounted to "fraudulent transfers." *See* Ex. C ¶¶ 38-44. Mueller maintains that his salary and these payments were reasonable and customary, adequately disclosed in the PPMs, and approved by attorneys and accountants. *See* Ex. B; Ex. D. In both cases, a court will be asked to determine whether Mueller was permitted to take a salary and/or accept certain payments from the deeproot entities.

26. Fourth, both the Trustee and the SEC allege that Mueller acted with the intent to defraud. This allegation is a necessary element to each of the SEC's claims, which allege a scheme to defraud investors. *See* Ex. A ¶¶ 72-91. Likewise, most of the Trustee's claims allege "fraudulent transfers" or violations of TUFTA, *see* Ex. C ¶¶ 57-73, 81-82, which require proof that Mueller acted with "intent to hinder, delay, or defraud" or "without receiving reasonably equivalent value." Tex. Bus. Com. Code § 24.005. Mueller denies that he acted with fraudulent intent, denies that the deeproot entities did not receive reasonably equivalent value, and has asserted a defense of reliance on advice of counsel, which can negate fraudulent intent. *See* Ex. B; Ex. D; *see also United States v. Ragsdale*, 426 F.3d 765, 778 (5th Cir. 2005). Both cases thus will thus likely require proof of Mueller's intent.

27. Fifth, both the Trustee and the SEC allege that Mueller breached his fiduciary duties to the deeproot entities. The Trustee asserts a stand-alone cause of action for breach of fiduciary

duties, alleging that Mueller breached his duties of loyalty and care by causing the entities to engage in "Ponzi" transactions, paying himself a salary, and taking other actions that are the basis of its other claims. *See* Ex. C ¶¶ 83-91. The SEC alleges that Mueller violated the securities laws by failing to disclose a breach of fiduciary duty related to investments in the deeproot entities. *See* Ex. A ¶¶ 55, 58, 62. In both cases, a court will be asked to determine the nature of Mueller's duties to the deeproot entities and whether Mueller breached those duties.

28. The substantial overlap between the cases also includes the likely witnesses. In his initial disclosures in both the District Court Proceeding and this Adversary Proceeding, Mueller identified the same set of witnesses, including his former attorneys. *See* Ex. F; Ex. G. The Trustee's disclosures identify many of the same witnesses, including Mueller's former counsel and a corporate representative for the SEC. *See* Ex. H. Several of these witnesses have already been deposed in the SEC and others are set to be deposed in the coming weeks (no depositions have been taken in this Adversary Proceeding). One of those witnesses is Mueller, who the SEC deposed twice—during its pre-suit investigation and in March 2023, on the latter occasion with the Trustee's counsel in attendance. *See* Ex. I.

29. The substantial overlap between the District Court Proceeding and this Adversary Proceeding similarly extends to the parties. Many of the deeproot entities were named as Defendants or Relief Defendants in the District Court Proceeding. *See* Ex. A. The Trustee did not answer the SEC's claims, electing instead to wait until December 2022 to make an appearance. *See Notice of Appearance of Counsel*, filed in District Court Proceeding [ECF No. 78]. The Trustee and the SEC then entered into a settlement agreement, to which Mueller objected as entirely without factual or legal basis. *See Defendant Robert J. Mueller's Objections to Consent Judgment*, filed in District Court Proceeding [ECF No. 82].

9

30. In short, the District Court Proceeding and this Adversary Proceeding involve substantially overlapping allegations, parties, and witnesses—in a case that is likely to find its way to the District Court at some point. Permitting this second-filed action to proceed would risk conflicting judgments and involve a substantial waste of judicial and the parties' resources. The first-filed rule requires that this Court transfer this proceeding to the District Court, who may determine whether this action should be stayed, consolidated with that action, returned in whole or in part to this Court, or addressed in some other way.

31. In the alternative, in the event that the Court elects not to transfer this Adversary Proceeding to the District Court, Mueller requests that this proceeding be abated and/or the trial date and other deadlines continued until after the trial in the District Court Proceeding is completed. Such an abatement or continuance would avoid potential scheduling conflicts between the two cases (including potential trials happening at the same time) and avoid the potential for inconsistent rulings or judgments in the two cases.

## IV. CONCLUSION

32. For the reasons stated above, Mueller requests that the Court transfer this Adversary Proceeding to the District Court for determination of whether this case should be stayed, consolidated, or otherwise addressed. In the alternative, Mueller requests that the Court abate this case or continue the trial date and other deadlines until after the trial in the District Court Proceeding. Mueller further requests any and all other relief to which he may be entitled.

Dated: April 26, 2023

                                                           Respectfully submitted,

                                                           **DAVIS & SANTOS, P.L.L.C.**

                                        By: */s/ Jay Hulings*
                                                Jason M. Davis
                                                State Bar No. 00793592
                                                Email: jdavis@dslawpc.com
                                                H. Jay Hulings
                                                State Bar No. 24104573
                                                Email: jhulings@dslawpc.com
                                                719 S. Flores Street
                                                San Antonio, Texas 78204
                                                Tel: (210) 853-5882
                                                Fax: (210) 200-8395

                                                ***Counsel for Defendant Robert Mueller***

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for the undersigned counsel for Defendant attempted to confer with counsel for Plaintiff, who did not respond to emails about Plaintiff's position on this motion.

*/s/ Jay Hulings*
H. Jay Hulings

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2023, the foregoing document was served on counsel of record via the Court's ECF system.

**PULMAN, CAPPUCCIO & PULLEN, LLP**
Randall A. Pulman
rpulman@pulmanlaw.com
W. Drew Mallender
dmallender@pulmanlaw.com
Anna K. MacFarlane
amacfarlane@pulmanlaw.com
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

*Counsel for John Patrick Lowe,
Chapter 7 Trustee for Deeproot
Capital Management, LLC et al.*

*/s/ Jay Hulings*
H. Jay Hulings
